UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERNATIONAL GLOBAL BANK N.V.**<br>  Berg Arraray Z/N Bridges Offices, 2nd Floor, Willemstad, Curaçao<br><br>    *Plaintiff*,<br><br>v.<br><br>**THE UNITED STATES DEPARTMENT OF TREASURY**,<br>  1500 Pennsylvania Avenue, NW, Washington, D.C. 20220<br><br>**JANET YELLEN,**<br>  In her official capacity as Secretary of the United States Department of Treasury<br>  1500 Pennsylvania Avenue, NW, Washington, D.C. 20220<br><br>**THE UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSET CONTROL,**<br>  1500 Pennsylvania Avenue, NW, Freedman's Bank Building Washington, D.C. 20220<br><br>  and<br><br>**BRADLEY T. SMITH**<br>  In his official capacity as Director of the United States Department of Treasury Office of Foreign Assets Control<br>  1500 Pennsylvania Avenue, NW-Annex Washington, D.C. 20220<br><br>    *Defendants*. | Case No.: |

**COMPLAINT**

Plaintiff, International Global Bank N.V. ("IGB"), formerly known as South American Investment Bank N.V. ("SAI Bank"), sues Defendants, the United States Department of Treasury, its Secretary, Janet Yellen; the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and OFAC's Director, Bradley T. Smith.  In support, Plaintiff alleges as follows:

## INTRODUCTION

1. This lawsuit arises from OFAC's unreasonable delay in deciding license application No. Venezuela–EO13850-2020-369648-1, submitted to OFAC by IGB on September 9, 2020, and attached as Exhibit "1."  Through this license application, IGB requested that OFAC release $4,359,746.92, which were erroneously blocked by IGB's former correspondent bank in the U.S., ItalBank International Inc. ("ItalBank"), alleging compliance with Executive Order ("E.O") 13850 of November 1, 2018.

2. Despite IGB's persistent outreach to OFAC for updates on this matter, IGB's license application has remained unresolved for more than four years. Furthermore, this license application is straightforward: the blocked funds should be released because they belong to IGB and have no nexus to any individual, entity, activity, or jurisdiction subject to OFAC Sanctions.

3. Additionally, the improper blocking of the funds has caused significant damage to IGB's business interests, including a deterioration of its cash reserves, and exposure to litigation both in the U.S. and abroad.

4. OFAC's delay in resolving IGB's license application constitutes a violation of the Administrative Procedure Act ("APA"), which requires OFAC to conclude matters presented to that agency within "a reasonable time."  5 U.S.C.S. § 555(b). Accordingly, IGB brings this action to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C.S. § 706(1).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA.

6. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), (e)(1), venue is proper in the District of Columbia because Defendants reside here, and a substantial part of the events giving rise to IGB's claim occurred in this District.

## PARTIES

7. IGB, formerly known as South American Investment Curaçao Bank N.V. ("SAI Bank"), is an international bank incorporated under the laws of Curaçao. Its principal office is located at Berg Arraray Z/N Bridges Offices, 2nd Floor, Willemstad, Curaçao. SAI Bank changed its name to IGB in or around May 2022 for branding reasons.

8. The United States Department of the Treasury, a cabinet-level government department led by the Secretary of the Treasury, is located at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220. Treasury is responsible for overseeing the enforcement of U.S. economic sanctions.

9. Janet Yellen, who is sued here in her official capacity, is the Secretary of the Treasury in the United States. Secretary Yellen performs her official duties at 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220.

10. OFAC is the Treasury's agency responsible for administering U.S. economic sanctions programs, including sanctions imposed by the U.S. Government under E.O 13850. OFAC is located at 1500 Pennsylvania Avenue, NW Freedman's Bank Building Washington, D.C. 20220.

11. Bradley T. Smith, who is sued in his official capacity, is OFAC's Director. He performs his official duties at 1500 Pennsylvania Avenue, NW-Annex Washington, D.C. 20220.

## FACTUAL ALLEGATIONS

### *The Improper Blocking of IGB/SAI Bank's Funds*

12. IGB offers international payment, credit, treasury, and investment services to companies and individuals mainly in North America, Europe, the Caribbean, Central America, and South America.

13. Neither IGB, nor SAI Bank has ever been included by OFAC on the Specially Designated Nationals ("SDN") List or any other Sanctions list.

14. None of IGB's owners, directors, officers, or employees have ever been included by OFAC on the SDN List or any other Sanctions List.

15. Between August 10, 2017, and July 13, 2023, ItalBank served as IGB's correspondent bank in the U.S. and thus, provided IGB with a bank account for processing transactions in U.S. dollars. IGB/SAI Bank owned the funds deposited into this correspondent bank account.

16. On or about July 9, 2019, ItalBank blocked $4,359,746.92 from SAI Bank's bank account in alleged compliance with E.O 13850. Neither OFAC nor any other U.S. agency requested that ItalBank block SAI Bank's funds. Moreover, the $4,359,746.92 did not relate to any attempted or pending transaction subject to OFAC screening.

17. The blocking of IGB's funds was the result of ItalBank's attempt to retroactively block funds that had been processed for Consulting and Services Associate, S.A. ("CSA"), a former customer of SAI Bank, months before July 9, 2019; and thus, were no longer in the custody, possession, or control of SAI Bank.

18. CSA was a customer of SAI Bank that engaged in consulting and other services associated with the purchase and sale of petroleum. CSA rendered these services for various companies located throughout the world looking to purchase, sell, or acquire crude oil or

petroleum-based raw materials from global suppliers. *See* July 2019 emails between SAI Bank and CSA attached as Composite Exhibit "2" at 4 (informing that CSA has provided services to oil companies BIVAC, ECOFUEL, GULF Petrochem, FRAMECA, and TIPCO).

19. While performing due diligence on CSA, SAI Bank identified that CSA had entered into a consulting agreement with TIPCO, a Thailand-based company engaged in the manufacture and distribution of asphalt and petroleum products. Pursuant that consulting agreement, CSA provided TIPCO with logistics services, including certain cargo support services associated with a separate supply contract executed between TIPCO and Petroleos de Venezuela S.A. ("PdVSA") on January 13, 2014.

20. Over the course of their banking relationship, CSA also provided SAI Bank with records reflecting that it had entered into consulting agreements with TIPCO that are unrelated to PdVSA. *See* CSA Invoices to TIPCO attached as Composite Exhibit "3."

21. On January 28, 2019, OFAC designated PdVSA pursuant to E.O 13850 for operating in the oil industry of the Venezuelan economy.[1] As a result of this action, "all property and interests in property of PdVSA subject to U.S. jurisdiction are blocked, and U.S. persons are *generally* prohibited from engaging in transactions with them." (emphasis added).[2]

---

[1]   OFAC, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A*, https://home.treasury.gov/news/press-releases/sm594 (last visited Jan. 28, 2019).

[2]   Since January 28, 2019, OFAC has issued a number of "general licenses that authorize certain transactions and activities related to PdVSA and its subsidiaries within specified timeframes." OFAC, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A*, https://home.treasury.gov/news/press-releases/sm594 (last visited Jan. 28, 2019). For instance, on January 28, 2019, OFAC issued General License No. 8 "Authorizing Transactions Involving Petróleos de Venezuela, S.A. (PdVSA) Prohibited by Executive Order 13850 for Certain Entities Operating in Venezuela." A copy of this General License attached as Exhibit ¨4." Similarly, OFAC issued General License No. 9. "Authorizing Transactions Related to Dealings in Certain Debt [of PdVSA]." A copy of this General License attached as Exhibit "5."

22.     In an effort to comply with OFAC regulations, SAI Bank requested that CSA certify its relationship, if any, with PdVSA. CSA responded to SAI Bank's request by advising that "CSA S.A. is not conducting any direct or indirect business relation [sic] with Venezuelan government bodies or Venezuelan companies or Venezuelan ventures or Venezuelan mixed companies." *See* CSA's February 19, 2019 letter to SAI Bank attached as Exhibit "6."

23.     Relying on the OFAC Certification, SAI Bank processed seven wire transfers originated by TIPCO for ultimate credit to CSA's bank account with SAI Bank (the "TIPCO Wires"). The dates and amounts of the wire transfers are as follows:

| Date | Amount |
| --- | --- |
| 4/11/2019 | $598,407.40 |
| 4/26/2019 | $736,921.00 |
| 5/13/2019 | $691.869.80 |
| 5/21/2019 | $905,357.42 |
| 5/29/2019 | $35,858.40 |
| 5/29/2019 | $722,588.10 |
| 6/12/2019 | $668,744.80 |

24.     The wire transfer records for the TIPCO wires indicate that they were made by TIPCO, not PdVSA, as payment for logistics services provided by CSA to TIPCO. *See* Copies of these records attached as Composite Exhibit "7." These records also document that the TIPCO Wires were processed by TIPCO's bank in Thailand (TBank) and the Thai bank's correspondent bank in the U.S. (Wells Fargo) before arriving to SAI Bank's account with ItalBank.

25.     In 2019, SAI Bank conducted background check efforts on TIPCO using World-Check, a risk intelligence tool designed to screen individuals, entities, and transactions for potential compliance risks. *See* May 2019 World Check record attached as Exhibit "8." World-Check did not identify TIPCO as a blocked entity because TIPCO has never been sanctioned by OFAC or subjected to any publicly reported law enforcement actions in the U.S. or elsewhere.

26.     Following the TIPCO Wires, CSA transferred all of the funds relating to these wires

out of CSA's bank account with SAI Bank.

27. As part of due diligence and monitoring efforts, SAI Bank requested CSA to produce information concerning CSA's customers. And, on July 8, 2019, CSA provided SAI Bank with information stating that "TIPCO is purchasing heavy crude oil over the world mainly in Venezuela," and "[t]o Purchase crude oil TIPCO is paying PDVSA." *See* Compos. Exh. "2" at 2.

28. The information provided by CSA regarding TIPCO was shared with ItalBank and, months after the TIPCO Wires had been processed, that bank "blocked" $4,359,746.92 from SAI Bank's account with ItalBank.

29. The $4,359,746.92 came from funds deposited into SAI Bank's account with ItalBank by IGB or its customers, not including deposits from TIPCO. Between the date of the first TIPCO wire (April 11, 2019) and the date of the blocking (July 9, 2019), SAI Bank's account received $9,860,941.83 from sources different from TIPCO. *See* Bank Statements of IGB's bank account, for the period of April to July 2019, as Composite Exhibit "9." Notably, on July 9, 2019, SAI Bank's account with ItalBank received $3,103,589 from sources unrelated to CSA or TIPCO. Compos. Exh. "9" at 1, 2. This amount included $2,000,000 from customer Novo Banco S.A., $100,000 from customer Autofacil SPA SAC, and $1,003,589 from the cancellation of a Certificate of Deposit that SAI Bank held with ItalBank.

30. CSA no longer has a bank account with IGB. IGB/SAI Bank ceased processing wire transfers for CSA in July 2019; and was required to transfer the account balance to CSA ($939.644,48) on December 31, 2022, due to legal proceedings CSA initiated against IGB in Curacao. *See* Statement of CSA's account with IGB attached as Exhibit "10."

### *IGB's License Application to OFAC*

31. Since the $4,359,746.92 belongs to IGB and not to any sanctioned entity or individual, no OFAC regulation authorized ItalBank to block IGB's funds. Further, ItalBank's

blocking of IGB's funds was improper because the $4,359,746.92 did not relate to any attempted or pending transaction subject to OFAC screening.

32. But a financial institution cannot unblock funds unless authorized by OFAC. Accordingly, on September 9, 2020, IGB submitted to OFAC a license application requesting release of the funds. *See* Exh. "1."

33. Despite IGB's persistent outreach to OFAC for updates on the status of its application, OFAC has yet to resolve this matter.

34. For example, on September 15, 2022, IGB emailed OFAC requesting information about the status of the license application, and to be placed in contact with the assigned case manager. *See* email chain between IGB and OFAC from September to December 2022, attached as Composite Exhibit "11". OFAC did not respond to these emails.

35. Similarly, on November 4, 2022, IGB emailed OFAC requesting an update from the case manager and informing OFAC that IGB had been sued in Curacao for allegations related to the blocked funds. *See id.* at 12. OFAC responded to this email on November 7, 2022, advising that the case was under intra-agency review and OFAC continued to evaluate IGB's license application internally. *Id.* at 9

36. On November 22, 2022, IGB once again emailed OFAC to inquire about any progress on the license application. *Id.* OFAC responded to this email on November 23, 2022, advising that the case remained under review. *Id.* at 8.

37. On December 22, 2022, IGB emailed OFAC to follow up on the status of the license application and provide OFAC with a litigation update. *See id.* at 7, 8.

38. On April 7, 2023, IGB emailed OFAC to inform them that it had engaged new counsel and to follow up on the case, noting that IGB remained amenable to clarifying any questions or concerns OFAC had regarding the pending application. *See* April 2023 email tread

8

between IGB and OFAC attached as Exhibit "12". OFAC responded to this email on April 10, 2023, advising to IGB that it continued to evaluate the case and would contact IGB should they have any questions. *Id* at 1.

39. On May 23, 2023, IGB sent OFAC a letter requesting a determination on the license application. A copy of this letter attached as Exhibit "13." OFAC did not respond to this letter.

40. On September 6, 2023, IGB sent a new letter to OFAC inquiring about its license application and notifying OFAC that IGB had closed its account with ItalBank. *See* September 6, 2023 email exchange between IGB and OFAC attached as Exhibit "14" at 2-4. OFAC confirmed receipt of this letter on the same date. *Id.* at 1.

41. On October 31, 2023, IGB contacted again OFAC to inquire about the status of the license application in light of General License No. 44 of October 18, 2023 "*Authorizing the Wind Down of Transactions Related to Oil or Gas Sector Operations in Venezuela*." *See* October 31, 2023 Letter attached as Exhibit "15." OFAC confirmed receipt of this letter on the same date. *See* copy of these emails attached as Composite Exhibit "16" at 3, 4.

42. IGB sent emails to OFAC following up on the status of the application on December 7, 2023, January 17, 2024, and February 26, 2024. *See* Compos. Exh. "16" at 1, 2. OFAC did not respond to these emails.

43. Due to OFAC's continued inaction, on August 14, 2024, IGB served OFAC, and the other Defendants with the Demand for Resolution of the Pending License Application attached as Exhibit "17." The Chief of OFAC's Licensing Division confirmed receipt of the demand letter but noted that it was his last day at the agency. *See* August 14, 2024 correspondence between IGB and OFAC attached as Composite Exhibit "18" at 2, 3.

9

44. On August 16, 2024, IGB emailed its demand letter to the new OFAC officials responsible for reviewing the matter. *See* Composite Exhibit "18" at 1. OFAC confirmed receipt of demand letter. *Id.*

45. On September 13, 2024, IGB served the Defendants with a copy of this Complaint. IGB advised the Defendants that, unless OFAC resolved the pending license application before September 30, 2024, the Complaint would be filed. *See* IGB's September 13, 2024 Email to OFAC attached as Exhibit "19."

46. To date, OFAC has yet to resolve IGB's license application. According to OFAC's web page, the status of this application is "in progress." *See* OFAC record of Application Status attached as Exhibit "20."

### Legal Disputes Emerge From the Blocking of the Funds

47. On June 22, 2023, IGB commenced an *ex parte* application styled *In Re: Ex Parte Application of International Global Bank N.V* (Misc. No. 23-mc-337), seeking the Court's assistance to obtain evidence for preparing a civil lawsuit to be filed in Curaçao against CSA.

48. On August 7, 2023, the Court granted IGB's Application and authorized IGB to issue a third-party subpoena directed at ItalBank.

49. In compliance with IGB's subpoena, Mr. Rogelio Cardozo, the CEO, and corporate representative of ItalBank, appeared for a deposition on March 12, 2024. *See* Extracts of the transcript of Cardozo's deposition attached as Exhibit "21" (Transcr., Cardozo Dep.). During his testimony, Mr. Cardozo admitted that the $4,359,746.92 belong to IGB and confirmed that there was no pending wire transfer of that amount at the time the funds were blocked. *See* Exh. 20 Transcr., Cardozo Dep. at 39:17-19, 44:7-14, 65:16-18, 68:10-17, and 76:12-15. He was unable to provide a clear explanation of the findings that justified the blocking of the $4,359,746.92 and testified that ItalBank did not prepare any report detailing the investigation that led to the blocking

of these funds. *Id* at 45:20-24, 46:3-6, 74:18-75:7.

50. In preparation for legal actions against ItalBank for the wrongful blocking of the $4,359,746.92, IGB learned that, in *Carlos Eduardo Marrón et al. v. Nicolas Maduro Morros et al.* (Case No. 1:21-CV-23190-FAM), a case pending in the Southern District of Florida, plaintiffs had filed a motion for a writ of garnishment over the blocked funds. A copy of that motion is attached as Exhibit "22." The plaintiff of that case obtained a multimillion-dollar judgment against a certain Venezuelan military and political officials, including Nicolas Maduro and Tarek El Aissami. More specifically and relying on ItalBank's Report of Blocked Transactions to OFAC, plaintiffs alleged in their motion that the $4,359,746.92 belongs to CSA, and that CSA is an instrumentality of the Defendants in that Florida litigation.

51. Following IGB's notification to the plaintiffs in the Florida litigation that IGB owns the $4,359,746.92, and not CSA, the plaintiffs withdrew their motion for a writ of garnishment. A copy of the Notice of Withdrawal of Motion of Garnishment is attached as Exhibit "23." But IGB was required to engage counsel and oppose the Plaintiff's motion in the Florida litigation, leading to the payment of attorneys' fees and costs.

### *Damages Caused by The Blocking of IGB's Funds*

52. Because the $4,359,746.92 have remained in an account from which only OFAC-authorized debits may be made, the improper blocking of the $4,359,746.92 has deprived IGB of its ability to use or control its property.

53. As a result of being deprived of these funds, IGB was unable to complete pending wire transfers to its customers. Consequently, IGB's customers, including CSA, initiated litigation against IGB in Curaçao. In these cases, the courts in Curaçao mandated that IGB pay damages to its customers. Additionally, IGB had to hire legal counsel in Curaçao to represent it in these proceedings.

54. Moreover, the blocking of the $4,359,746.92 has led to a deterioration of IGB's cash reserves, including a worsening of important financial ratios, which could cause IGB to be non-compliant with the liquidity requirements set forth by the Central Bank of Curacao and Saint Maarten.

55. IGB has retained the undersigned law firm and is obligated to pay them a reasonable fee.

56. All conditions precedent to this action have been performed, excused, waived, or would otherwise prove futile.

**COUNT I – UNREASONABLE DELAY**
**(Against all Defendants)**

57. IGB re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

58. APA requires Defendants to conclude matters presented to them within "a reasonable time." 5 U.S.C.S. § 555(b).

59. The APA also provides that federal courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.S. § 706(1).

60. Defendants' delay in rendering a decision on IGB's license application, which was submitted to OFAC over four years ago, is unreasonable.

61. Through its license application and other communications with OFAC, IGB has provided evidence that ItalBank's blocking of the funds was improper.

62. IGB has followed up with OFAC on multiple occasions to inquire about the status of its license application.

63. The improper blocking of the funds has caused damages to IGB's business interests, including a deterioration of its cash reserves, and exposure to litigation both in the U.S. and abroad.

64. Unless the Court intervenes, IGB will continue to suffer the consequences of having its funds blocked by OFAC as long as the Defendants delay a decision on its license application.

WHEREFORE, Plaintiff respectfully requests that this Court: (i) order Defendants to issue an immediate written, reasoned decision on Plaintiff's pending Application No. Venezuela–EO13850-2020-369648-1; (ii) award Plaintiff attorney's fees and costs under applicable law, including the Equal Access to Justice Act, 82 U.S.C. § 2412 *et seq*.; and (iii) such other and further relief as the Court may deem just and proper.

Dated: November 7, 2024                                Respectfully submitted,

 

Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Tel. No. 301-807-3847
Fax No. 240-238-6701
Aorenberg@orenberglaw.com

*Counsel for Plaintiff*
*International Global Bank N.V.*